1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10    WINONA S. HUNT,

11              Plaintiff,                    No. CIV S-05-0534 CMK

12        vs.

13
      JO ANNE B. BARNHART,
14    Commissioner of Social Security,

15              Defendant.                    ORDER

16    _____/

17              Plaintiff, Winona S. Hunt, brings this action for judicial review of a final decision

18    of the Commissioner of Social Security ordering cessation of her supplemental social security

19    income (SSI) benefits.  The parties have filed cross motions for summary judgment.  As both

20    parties have consented to magistrate jurisdiction, the motions are before the undersigned for

21    decision.

22    I.  Background

23              Plaintiff applied for SSI on March 8, 1995.  Her application was denied initially

24    and upon reconsideration.  After a hearing before an Administrative Law Judge (ALJ) on

25    November 12, 1996, plaintiff was found disabled due to herniated lumbar disc (failed back

26    syndrome following surgery) with an onset date of February 6, 1995.  Pursuant to a continuing

1  disability review, plaintiff's benefits were terminated effective June 7, 2002.  Plaintiff filed a

2  timely request for a hearing, and a hearing was held before an ALJ on February 19, 2003.

3         In his September 25, 2003 decision, the ALJ made the following findings.   He

4  found that plaintiff had previously been found to be disabled on February 6, 1995.  (Tr. 18.)  The

5  ALJ determined that the medical evidence established that plaintiff had degenerative lumbar

6  disease; however, he determined that the medical evidence established that plaintiff did not have

7  an impairment or combination of impairments that met or equaled a listed impairment.  (Tr. 18.)

8  The ALJ noted that plaintiff's medical impairment in 1996 was a spinal disorder, and he

9  concluded that the medical evidence established that plaintiff's medical impairment had

10  improved since November 1996.  (Tr. 18.)  The ALJ found that plaintiff's medical improvement

11  was related to her ability to work.  (Tr. 18.)  The ALJ discredited plaintiff's testimony

12  concerning her limitations.  (Tr. 18.)  The ALJ found that plaintiff had the residual functional

13  capacity (RFC) to perform the physical exertional requirements of work, except for prolonged

14  standing and walking for more than two hours during an eight-hour workday, lifting or carrying

15  greater than ten pounds.  (Tr. 18.) He concluded that plaintiff had no non-exertional limitations.

16  (Tr. 18.)

17         In assessing plaintiff's ability to work, the ALJ found that she had no past

18  relevant work experience, a limited education and was thirty-six-years-old, which means she was

19  a younger individual.  (Tr. 19.)  The ALJ determined that plaintiff had the residual functional

20  capacity (RFC) to perform the full range of light or sedentary work.  (Tr. 19.)  Based on

21  plaintiff's RFC, age, education, and work experience, the ALJ found that, pursuant to the

22  regulations, she was no longer disabled.  (Tr. 19.)  He found that plaintiff's disability ceased on

23  June 7, 2002.  (Tr. 19.)

24         The decision of the ALJ became final when the Appeals Council denied

25  plaintiff's request for a review. The plaintiff filed a timely appeal in this court .

26  ///

1   II. <u>Standard of Review</u>

2           This court's review is limited to whether the Commissioner's decision to deny

3   benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported

4   by substantial evidence on the record as a whole.  <u>See Copeland v. Bowen</u>, 861 F.2d 536, 538

5   (9th Cir. 1988) (citing <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573,

6   575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but

7   less than a preponderance, <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996) (citing <u>Sorensen v.</u>

8   <u>Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

9   mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389,

10  402, 91 S. Ct. 1420 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59

11  S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that

12  detracts from the Commissioner's decision, but the denial of benefits shall not be overturned

13  even if there is enough evidence in the record to support a contrary decision. <u>See Jones v.</u>

14  <u>Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative

15  findings, or if there is conflicting evidence supporting a finding of either disability or

16  nondisability, the finding of the ALJ is conclusive, <u>see Sprague v. Bowen</u>, 812 F.2d 1226, 1229-

17  30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

18  weighing the evidence. <u>See Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

19  III.   <u>Discussion</u>

20          In her motion for summary judgment, plaintiff argues that substantial evidence

21  does not support the ALJ's finding of medical improvement; that the ALJ erred by failing to

22  make any findings in regards to plaintiff's obesity; that the ALJ erred in finding plaintiff's

23  subjective complaints not credible; and that the ALJ did not properly determine plaintiff's RFC.

24  ///

25  ///

26  ///

1     A.     Substantial Evidence Supporting Finding of Medical Improvement

2           Plaintiff argues that substantial evidence in the record does not support the ALJ's

3    finding of medical improvement.  A claimant who has had an initial disability determination

4    continues to bear the burden of proving that she is disabled; however, the claimant is entitled to a

5    presumption of continuing disability.  See Iida v. Heckler, 705 F.2d 363, 365 (9th Cir. 1983).

6    The Commissioner bears the burden of producing evidence that a claimant's condition has

7    improved.  See id.  Disability benefits cannot be terminated unless substantial evidence

8    demonstrates medical improvement in the claimant's impairment so that the claimant is able to

9    engage in gainful activity.  See 42 U.S.C. § 423(f).  Medical improvement is defined as any

10   decrease in the medical severity of the impairment that was present at the time of the most recent

11   medical decision favorable to the claimant—the most recent decision that the claimant was

12   disabled or continued to be disabled.  See 20 C.F.R. §§ 416.994(b)(1)(i) and (b)(2)(i).

13          To determine whether medical improvement has occurred, the ALJ compares the

14   claimant's current medical condition with the condition at a comparison point in the past.  See 20

15   C.F.R. § 416.994.  The comparison point date (CPD) can be the date that the claimant was first

16   found disabled.  See 20 C.F.R. §§ 416.994(b)(1)(i) and (b)(2)(i).  This comparison makes it

17   necessary for both the ALJ and a reviewing court to review the evidence of a claimant's prior

18   symptoms, signs, and laboratory findings.  The comparison also requires knowledge of the basis

19   for the prior favorable decision, including the impairments found disabling and the reasons for so

20   finding.

21          Here, the CPD is February 6, 1995. (Tr. 32-33.)  Plaintiff was found disabled due

22   to a spinal disorder; specifically a herniated lumbar disc (failed back syndrome following

23   surgery).  (Tr. 32.)  The basis for the prior favorable decision was that " Dr. Ludberg, the

24   claimant's treating physician, [had] endorsed the subjective complaints alleged by the claimant.

25   His opinion is supported by the regularity of medical care, the treatment modalities, and the

26

4

1   diagnostic studies." (Tr. 32.)  The favorable decision also noted that there were no clearly

2   contrary findings from examining and treating sources.  (Tr. 32.)

3            In his September 25, 2003, decision, the ALJ reviewed the CPD medical records.

4   He noted that the records indicated that plaintiff underwent back surgery on April 18, 1995; that

5   the postoperative outpatient treatment records indicated continued improvement, though plaintiff

6   complained of continued low back and left hip discomfort after heavy housework and of

7   occasional left leg cramping.  (Tr. 15.)  Examination in August 1995 revealed "normal motor

8   functioning, gait, forward flexation and with minimal abnormal sensation involving the left

9   foot." (Tr. 15.)  Plaintiff was advised to avoid activities aggravating her pain and to continue

10  taking Motrin as needed.  (Tr. 15.)  The various other medical records at the CPD chronicled

11  plaintiff's low back and leg pain, tenderness, muscle spasm, positive straight leg raising,

12  worsening lower back pain with forward bending and decreased sensation and CT scanning

13  showing the disc herniation at L5-S1.  (Tr. 15, 75-78, 87, 164, 166-168.)

14           Plaintiff's recent medical records indicate that she was seen on May 11, 2001 for

15  a lump on her left foot and an upper respiratory infection.  (Tr. 277.)  During the May 11, 2001

16  exam, the doctor noted that plaintiff sat comfortably on the exam table and that plaintiff had back

17  surgery in 1995 and took Tylenol as needed for pain.  (Tr. 277.)  Plaintiff did not complain of

18  back pain during this visit.  (Tr. 277.)  Plaintiff's next medical treatment was in June 2002, when

19  she returned to the clinic with back and neck pain.  (Tr. 272, 273.)   In December 2002, plaintiff

20  returned to the clinic complaining of skin tags on her neck, which were removed.  (Tr. 325.)

21  Plaintiff was also given prescription medication for back pain.  (Tr. 325.)  A CT scan showed

22  central disc L4-5 herniation (Tr. 336.) At the L5-S1 level, there was a degenerated disc and mild

23  narrowing of the left L5-S1 neural foramen, but not focal disc herniation or spinal stenosis.  (Tr.

24  336.)

25           In May 2002, plaintiff was examined by consultative physician Steve Guse, M.D.

26  (Tr. 282.)  During her comprehensive orthopedic evaluation, plaintiff described her history of

1   back pain beginning in 1993.  (Tr. 279.)  She noted that she had severe recurrent back pain three

2   or four times a year; that the back pain was activity related; and she has altered her activities due

3   to back pain.  (Tr. 280.)  Dr. Guse noted that plaintiff was mostly independent in her daily

4   activities, but relied on her husband for much of the heavy housework.  (Tr. 280.)  The examiner

5   noted that plaintiff moved freely about the exam room, was in no acute distress and appeared

6   athletic.  (Tr. 280.)

7           Dr. Guse opined that the clinical examination revealed minimal objective

8   evidence of disability.  (Tr. 282.)  Specifically, plaintiff had full range of motion, normal

9   strength, and intact sensation.  (Tr. 282.)  Dr. Guse assessed plaintiff as having no postural,

10  manipulative, or environmental limitations and able to lift twenty-five pounds frequently and

11  fifty pounds occasionally.  (Tr. 282.)  He noted that plaintiff could occasionally bend, crouch and

12  stoop, but that these postural changes should be avoided frequently or constantly.  (Tr. 282.)  Dr.

13  Guse concluded that plaintiff could perform in a sedentary occupation, but recommended

14  frequent postural changes.  (Tr. 282.)

15          In June 2003, consultative examiner R. Kelley Otani M.D. examined plaintiff.

16  Dr. Otani's examination of the spine revealed decreased lumbar lordosis, decreased lumbar

17  flexion, and positive straight leg raising to twenty degrees.  (Tr. 342-343.)  There was no

18  evidence of gross tenderness, effusion or instability of the joints.  (Tr. 343.)  Motor strength was

19  normal in the upper and lower extremities.  (Tr. 343.)  Dr. Otani assessed plaintiff as having

20  lower back pain and status-post L5-S1 discectomy.  (Tr. 343.)  Dr. Otani noted that he could find

21  no focal neurological findings or evidence of radicular component with regard to plaintiff's

22  overall pain symptomatology.  (Tr. 343.)  He opined that plaintiff's subjective complaints

23  appeared to be greater than the objective findings.  (Tr. 343.)

24          After being provided with additional information regarding plaintiff's lower back

25  pain, Dr. Otani did not change his assessment of plaintiff's "nonphysiologic and subjective

26  complaints appear to be greater than objective findings."  (Tr. 344-345.)  He noted that plaintiff

6

1   could lift and/or carry twenty-five pounds occasionally and ten pounds frequently. (Tr. 337.)  He

2   noted that plaintiff's standing and walking were affected by her back pain but that she could

3   walk or stand for two hours in an eight-hour day. (Tr. 337.)  He found that her sitting was

4   impaired but that she could sit up to six hours in an eight-hour day; however, he noted plaintiff

5   would require frequent postural change.  (Tr. 338.)  He noted that plaintiff could never climb or

6   crawl.  (Tr. 338.)

7            In finding that plaintiff had medically improved, the ALJ noted that, although

8   current medical evidence demonstrated some continuing musculoskeletal abnormalities relating

9   to plaintiff's lumbosacral spine as compared with the comparison point records, there has been

10  obvious medical improvement.  (Tr. 16.)  In particular, the ALJ noted that plaintiff had not

11  sought medical treatment for her back until her continuing disability review; there is no

12  indication from medical records that she was experiencing back pain.  (Tr. 16.)  The ALJ also

13  noted that an examination of the L5-S1 level (i.e. the problem area that precipitated the initial

14  finding of disability) indicates no disc herniation, spinal stenosis with only mild narrowing and

15  with no significant clinical abnormalities involving motor functioning, sensation, coordination,

16  gait, etc.  (Tr. 16.)  Specifically, the ALJ pointed out that, after surgery, plaintiff's back

17  impairment no longer met a medical listing due to minimal objective findings.  (Tr. 16.)  He

18  found that her improvement was related to her ability to work.

19           The conclusions of the ALJ are supported by the record.  The ALJ considered

20  plaintiff's symptoms in that he specifically noted her recent history of medical treatment—that

21  from 1996 to 2002, plaintiff did not visit the doctor due to back pain.  (Tr. 15, 17.)  This is in

22  sharp contrast to the medical records from the CPD, which reflect several visits due to back pain.

23  (Tr. 15.)  The ALJ considered the opinions of examining physicians and results of plaintiff's CT

24  scans.  (Tr. 16.)  As specific and legitimate reasons supported by substantial evidence in the

25  record were provided to conclude that plaintiff had medical improvement, the ALJ's decision

26  must stand.

1      B.      Failure to Make Findings Concerning Obesity

2              Plaintiff argues that the ALJ erred in failing to consider the limiting effects of

3      plaintiff's obesity.  Plaintiff argues that the ALJ erred because he had a duty, since she was pro

4      se, to develop the record by asking her about her obesity and how her obesity affected her

5      impairment and her functioning.  The ALJ has a "special duty to fully and fairly develop the

6      record and to assure that the claimant's interests are considered....even when the claimant is

7      represented by counsel."  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  When a

8      claimant is not represented by counsel, this responsibility is heightened.  See Higbee v. Sullivan,

9      975 F.2d 558, 561 (9th Cir. 1992.)  "It is incumbent upon the ALJ to scrupulously and

10     conscientiously probe into, inquire of, and explore for all the relevant facts."  Ceayla v. Halter,

11     332 F.3d 1177, 1183 (9th Cir. 2003).  When there is evidence of obesity, the ALJ must

12     determine the effect of the claimant's obesity on her other impairments, her ability to work, and

13     her general health. See Celaya, 332 F.3d at 1182.

14             In Celaya, the pro se claimant was diagnosed with diabetes and hypertension.

15     She was also characterized as extremely obese, in that her Body Mass Index (BMI) 40. The

16     Ninth Circuit reasoned that the ALJ should have considered obesity as a disabling factor in the

17     sequential analysis, even though it was not explicitly raised by claimant, for three reasons.  See

18     Celaya, 332 F.3d at 1182.  First, it was raised implicitly in Celaya's report of symptoms.

19     Second, it was clear from the record that Celaya's obesity was at least close to the listing

20     criterion, and was a condition that could exacerbate her reported illness.  Third, in light of

21     Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should

22     have alerted him to develop the record in respect to her obesity.  See id.

23             Here, the record does not indicate that plaintiff's obesity exacerbated plaintiff's

24     impairment of back pain.  To the extent that plaintiff's back pain was exacerbated by her weight,

25     the ALJ already considered such impact when he considered her back pain.  The record

26

1    indicates that plaintiff has a BMI of 32.9, 30.1 or 31.6,[1] which is moderately obese. (Pl.'s Mot.

2    Summ. J. at 17.) Dr. Guse, a consultative examining physician, observed that plaintiff "appeared

3    athletic." (Tr. 280). Plaintiff did not explicitly raise her obesity as a disabling factor; for

4    example, she stated that she was disabled because "I have back problems all the time." (Tr. 229.)

5    Plaintiff described her impairments as "back problems and pain." (Tr. 232.) She stated that she

6    had visited the doctor due to back problems and a foot injury. (Tr. 250.) Plaintiff's medical

7    records indicate that she had a primary diagnosis of back pain and a secondary diagnosis of

8    obesity. (Tr. 283.) However, the mention of obesity as a problem is scant; plaintiff's obesity is

9    generally mentioned as an observation and no treatment plan for her obesity is discussed in her

10   medical records. (Tr. 277 (noting plaintiff is "a little obese.")

11           There was no evidence before the ALJ, and none in the record, which states that

12   plaintiff's moderate obesity limits her functioning. No treatment or diagnosis assessed plaintiff's

13   limitations due to obesity. Moreover, the record does not reflect that plaintiff's moderate obesity

14   impaired her ability to work. Further, the court notes that at least one of plaintiff's examining

15   physicians observed that plaintiff "appeared athletic." See e.g., Celaya, 332 F.3d at 1182 (stating

16   that, among other things, claimant's appearance should have put ALJ on notice to inquire about

17   obesity.) Given the evidence in the record, the court concludes that the ALJ did not commit

18   reversible error by failing to consider plaintiff's moderate obesity.

19           C.      Plaintiff's Credibility

20           Plaintiff next claims that the ALJ improperly rejected her subjective allegations of

21   limitation. An ALJ may reject subjective complaints if he provides specific reasons for

22   explaining why a claimant's testimony was not credible. See Bunnell v. Sullivan, 947 F.2d 341,

23   345-346 (9th Cir. 1991). In determining whether subjective complaints are credible, the ALJ

24

25           [1]Social Security Ruling 02-1p and the Department of Health and Human Services Center
     for Disease Control and Prevention define an individual as obese when her BMI is calculated to
26   be 30 and above.

9

1   should first consider objective medical evidence and then consider other factors.  See id. at 344.

2   Other factors include plaintiff's daily activities, prior inconsistent statements or inconsistent

3   testimony,  unexplained or inadequately explained failure to seek treatment, and lack of

4   supporting objective medical evidence. See  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.

5   1996).

6           Here, the ALJ noted that, although plaintiff could be expected to have some

7   discomfort and soreness, plaintiff's overall pain allegations were not supported by the objective

8   evidence. (Tr. 17.)  He credited Dr. Otani's findings that plaintiff's nonphysiologic and

9   subjective complaints appeared to be greater than objective findings. (Tr. 17.)  The ALJ further

10  noted that plaintiff's presentation of her medical problems was inconsistent.  See Thomas v.

11  Barnhart, 278 F.3d 948, 958-959 (9th Cir. 2002).  Specifically, he noted that plaintiff sought no

12  medical care for her back for six years after her back surgery and only sought medical treatment

13  after learning she might lose her disability benefits.  (Tr. 17.)  The ALJ did not fully discredit

14  plaintiff—he credited her complaints to the extent that she would be precluded from performing

15  more than the very minimal demands of a sedentary job i.e. work involving mainly sitting with

16  occasional standing and walking and no lifting greater than ten pounds.  (Tr. 17.)

17          The court finds that the ALJ's credibility determination is supported by

18  substantial evidence in the record and should be affirmed.  See Bunnell, 947 F.2d at 346.

19          D.      Residual Functional Capacity Findings

20          Plaintiff contends that substantial evidence in the record does not support the

21  ALJ's findings that plaintiff has the residual functional capacity (RFC) to perform a full range of

22  sedentary work.  Specifically, plaintiff contends that the RFC is not supported by substantial

23  evidence because the ALJ failed to consider the effect of combination of plaintiff's back

24  problems and her obesity on her ability to sit.  (Pl.'s Mot. Summ. J. at 24.)

25           An RFC assessment is a determination of what the claimant can still do despite

26  her physical, mental, and other limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a).  In

10

1 determining claimant's RFC, the ALJ must assess all the evidence (including the claimant's and

2 others' descriptions of limitation, and medical reports) to determine what capacity the claimant

3 has for work despite her limitations.  See id.

4          Here, Dr.Otani found that plaintiff could stand and/or walk at least two hours in

5 an eight-hour work day and sit about six hours in an eight-hour work day. (Tr.17, 377.)  Dr.

6 Otani also found that plaintiff could lift twenty-five pounds. (Tr. 377.)  However, the ALJ found

7 that twenty-five pounds was excessive, and limited plaintiff's lifting to ten pounds.  (Tr. 17.)

8 This is supported by the capacity assessment by Dr. Dann, which found that, in light of

9 plaintiff's back problems and moderate obesity, light lifting limits were more appropriate.  (Tr.

10 289.)  The opinions of Drs. Otani and Dann constitute substantial evidence to support the RFC

11 determination.  See Tonapetyan v. Halter, 242 F.3d 144, 1149 (9th Cir. 2001); Magallanes v.

12 Bowman, 881 F.2d 747, 752 (9th Cir. 1989).

13          The court rejects plaintiff's contention that the ALJ was required to consult a

14 vocational expert to determine plaintiff's RFC because the medical-vocational guidelines fail to

15 accurately describe plaintiff's particular limitations.  Specifically, plaintiff contends that her

16 inability to sit for prolonged periods removes her from the medical-vocational guidelines. The

17 underlying record does not support plaintiff's contention.  No treating or examining physician

18 suggested that plaintiff was more limited than Dr. Otani's assessment.  See Magallanes, 881 F.2d

19 at 752.  The aforementioned and other evidence in the record was such "relevant evidence as a

20 reasonable mind might accept as adequate to support a conclusion" that plaintiff was able to

21 engage in a full range of sedentary work. Id.

22 ///

23 ///

24 ///

25 ///

26 ///

IV.     <u>Conclusion</u>

       The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

       1.  Plaintiff's motion for summary judgment or remand is denied,

       2.  The Commissioner's cross motion for summary judgment is granted and;

       3.  The Clerk of the Court is directed to enter judgment and close this file.

DATED:   September 26, 2006.

                                       **CRAIG M. KELLISON**
                                       UNITED STATES MAGISTRATE JUDGE